UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

17-7073

RAYMOND MCGOVERN,

        Appellant,

v.

CHRISTOPHER BROWN, Badge No. 018, in his
individual and official capacities, *et al.*

        Appellees.

### APPELLEES' REPLY IN SUPPORT OF MOTION FOR SUMMARY AFFIRMANCE

Appellees Christopher Brown, Michael Glaubach, Jamie Barton, and the George Washington University ("GW"), submit this Reply in support of their Motion for Summary Affirmance, addressing the arguments raised in the Opposition filed by Appellant Raymond McGovern.

### ARGUMENT

There is one crucial fact, completely ignored by Mr. McGovern in his Opposition, and clearly displayed on the *Hatchet* Video, that fatally contradicts the core of Mr. McGovern's argument: Corporal Brown had his hand on Mr. McGovern's arm while he spoke to him, and then moved his hands to take hold of Mr. McGovern's arm to begin moving him toward the aisle, and throughout this bodily contact *Mr. McGovern did not respond to or acknowledge Corporal*

*Brown's presence. See Hatchet* Video, 00:00–00:06; *see also* Mem. Op. at 4-5, 27-28 (district court finds no genuine dispute that Corporal Brown was touching Mr. McGovern's arm as he directed Mr. McGovern to "come with me").

The indisputable bodily contact puts to rest any notion that Mr. McGovern simply had no idea that he had been approached by an officer who was trying to communicate with him.[1] Mr. McGovern pointedly ignored the fact that he was being touched, and made it clear that he had no intention of responding to Corporal Brown no matter what.[2] Therefore, there is no genuine dispute that Mr. McGovern was alerted to Corporal Brown's presence and was given an opportunity to comply.

This bodily contact, along with the undisputed fact that Corporal Brown

---

[1] Contrary to his arguments here, Mr. McGovern admitted during his deposition that he saw Captain Glaubach approaching and thought to himself, "U[h]-oh, what's going to happen next." Mem. Op. at 4 and 29 n.8. He therefore knew security officers were coming to him, but then intentionally stared at the back of the auditorium while Corporal Brown was speaking to him, all of which makes his refusal to acknowledge Corporal Brown's touches an obvious sign to a reasonable officer in Corporal Brown's position that he was dealing with a hostile, non-compliant individual. *See Hatchet* Video, 00:00–00:06.

[2] This conclusion is confirmed by Mr. McGovern's deliberate disruption of the ongoing speech by Secretary Clinton when he yelled, "This is America! This is America!" as he was being taken toward the exit of the auditorium. *Hatchet* Video at 00:17–00:20. He knew all along that the individuals confronting him during his protest were security or law enforcement officials authorized to exercise authority over the premises, not a random audience member or some other self-appointed functionary.

2

twice spoke to Mr. McGovern, stating, "Sir, can you please come with me,"[3] while wearing his police officer's uniform, Mem. Op. at 4-5, *Hatchet* Video at 00:00–00:05, unequivocally establishes that Corporal Brown had informed Mr. McGovern that he was being called upon to leave the premises consistent with the requirements of the D.C. unlawful entry statute. For example, in *O'Brien v. United States*, 444 A.2d 946 (D.C. 1982), the D.C. Court of Appeals held that an express directive to leave was given when an officer "explained to appellant O'Brien that he was free to continue distribution [of pamphlets] on the public sidewalk a few feet away[,]" and was "again advised by another Metro Transit Police officer that he could not distribute leaflets at the top of the escalator." *Id.* at 947. None of the officers in *O'Brien* directed the appellant to "leave," but it was unambiguous that he could not continue handing out pamphlets in the location he chose to occupy. Similarly, Corporal Brown's statements, coupled with his hand on Mr. McGovern's arm while wearing his police uniform, made it amply clear to any reasonable person that Mr. McGovern was not permitted to remain where he was. He was being directed to accompany Corporal Brown elsewhere, and Mr. McGovern chose to ignore that directive. Mr. McGovern's argument that "Sir, can

---

[3] Mr. McGovern repeatedly misrepresents how Corporal Brown's directive was conveyed by claiming it was spoken in "hushed tones," "whispered," or "softly," Appellant's Opp. at 3, 7, 9, and 17, when in fact the undisputed evidence was that Corporal Brown spoke in an "unraised voice." Mem. Op. at 5 (citing to Corporal Brown's deposition testimony in which he stated that he used his "normal voice" in speaking with Mr. McGovern).

3

you please come with me," in these circumstances, was somehow unclear or ambiguous is meritless.

Since Corporal Brown gave Mr. McGovern a clear directive to leave with him, there is no need for this Court to certify a question to the D.C. Court of Appeals on whether such a directive may be express or implied. Appellant's Opp. at 4-5, 16-17 (arguing that such a directive must be "express" under D.C. law). Nor is this a matter of "first impression"—just one of common sense. *See* Mem. Op. at 27-28 (rejecting Appellant's argument as "strain[ing] to avoid the plain import of Corporal Brown's direction").

It is important to emphasize, again, that for there to have been probable cause for Corporal Brown to arrest Mr. McGovern for unlawful entry, "the facts and circumstances within [Corporal Brown's] knowledge . . . [must be] sufficient to warrant a prudent man in believing [Mr. McGovern] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Neither Mr. McGovern's nor Corporal Brown's subjective view of the events matters one whit, and certainly not Corporal Brown's subjective view of whether he "was seeking to satisfy the requirement of issuing a directive to leave," or which particular District of Columbia law Mr. McGovern's conduct had violated. Appellant's Opp. at 12. The facts apparent in the *Hatchet* Video – which are not and could not be disputed by Mr. McGovern – established probable cause to arrest for unlawful entry.

4

Mr. McGovern alternatively raises a few issues that he claims are disputed. First, he argues that there was no evidence to suspect that Mr. McGovern was a "security threat." Appellant's Opp. at 14. But the district court did not hold that he was. Rather, it noted that Mr. McGovern's resistance in being removed from the auditorium was "particularly troubling in the context of a high-profile, high-security event involving the Secretary of State of the United States." Mem. Op. at 33. The observation is not disputed by Mr. McGovern, nor could it be.

Next, he claims that it was wrong for the district court to have interpreted Mr. McGovern's struggle with Captain Glaubach and Corporal Brown as "resistance." Appellant's Opp. at 15. Unfortunately for Mr. McGovern, the *Hatchet* Video, an unfiltered objective rendition of the events, is directly to the contrary. *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (court is entitled to rely on what the video depicts over any "visible fiction" averred by a party). From the time Corporal Brown first exerts pressure to remove Mr. McGovern toward the aisle, to the time they exit the auditorium, it is readily evident that the officers are reacting entirely in response to Mr. McGovern's physical resistance. *Hatchet* Video at 00:06–00:24. Had Mr. McGovern calmly walked out of the auditorium as requested, none of the use of force, of which he complains, would have been necessary. He bears sole responsibility for these events. Mr. McGovern's shouted protests, "This is America! This is America!" further evidence his unwillingness to

5

leave peaceably. *Hatchet* Video at 00:17–00:20. Mr. McGovern's argument has no merit.

Finally, Mr. McGovern claims it is disputed "whether the officers intentionally rammed [him] into a door as they removed him." Appellant's Opp. at 15. An "officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force," *Graham v. Connor*, 490 U.S. 386, 397 (1989), and Mr. McGovern makes no argument that such an act was objectively unreasonable under the factors discussed in *Graham*. Any incidental contact with the door during his eviction was not objectively unreasonable given Mr. McGovern's evident resistance, the high-security nature of the event, and Mr. McGovern's ongoing efforts to disrupt that event. As the *Hatchet* Video depicts, any contact Mr. McGovern made with the door was incidental to his struggle against the efforts of the officers to remove him from the auditorium. *See* Mem. Op. at 33-34; *Hatchet* Video at 00:22–00:24. Mr. McGovern offers nothing to the contrary.

Mr. McGovern repeatedly stresses that the district court needed to view the facts in the light most favorable to the non-movant, Appellant's Opp. at 5 and 9, but never explains how this would apply to any particular fact. He also argues that the *Hatchet* Video leaves out certain incidents of the encounter, Appellant's Opp. at 5-6, 9-10, but fails to articulate which, if any, of those facts are in dispute.

6

On Appellant's failure to make a concrete showing that the district court's ruling was not clearly correct, the Appellees are entitled to summary affirmance. *Yelder v. Gates,* 2010 WL 5370987 *1 (D.C. Cir. Dec. 28, 2010).

## CONCLUSION

The trial court's March 28, 2017 Memorandum Opinion and Order should be summarily affirmed.

Date: July 18, 2017                                         Respectfully Submitted,

*/s/ Nicholas S. McConnell*
Nicholas S. McConnell (#21837)
James N. Markels (#54641)
JACKSON & CAMPBELL, P.C.
1120 20th Street, NW
South Tower, Third Floor
Washington, DC 20036
(202) 457-1600
(202) 457-1678 (fax)
nmcconnell@jackscamp.com
jmarkels@jackscamp.com

*Counsel for Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of July, 2017, I served Mara Verheyden-Hilliard, Esquire, and Carl Messineo, Esquire, counsel for Appellant, with a copy of this Reply by via ECF.

*/s/ Nicholas S. McConnell*
Nicholas S. McConnell

## APPELLEES' CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME AND PAGE LIMIT

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2007 in 14 point Times New Roman type font. This document also complies with Fed. R. App. P. 27(d)(2) as it has fewer than 2,600 words.

*/s/ Nicholas S. McConnell*
Nicholas S. McConnell

3559528v.1